**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

NATHANIEL NELSON,

        Plaintiff,

vs.                                                                   Case No. 3:11-cv-549-J-32JBT

CITY OF LIVE OAK and OPERATIONS
MANAGEMENT INTERNATIONAL, INC.,

        Defendants.

_____

**ORDER**

Plaintiff, Nathaniel Nelson ("Nelson"), filed this race discrimination case against Defendants, City of Live Oak ("City") and Operations Management International, Inc. ("OMI"), in the Third Judicial Circuit Court, in and for Suwannee County, Florida. (Doc. 2). City and OMI removed the action to the United States District Court for the Middle District of Florida. (Doc. 1). OMI then filed a Motion to Dismiss and/or Motion to Compel Arbitration, arguing that Nelson is barred by res judicata from maintaining this suit, or in the alternative, that the Collective Bargaining Agreement ("CBA") requires that Nelson's race discrimination claim be arbitrated. (Doc. 9). Nelson filed a response (Doc. 10) and OMI filed a reply. (Doc. 13).

**I. STANDARD OF REVIEW**

Motions to compel arbitration are treated generally as motions to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). See Robert Half Int'l, Inc. v.. Thompson, 1999 WL 138849, at *1 (N.D. Ill. Mar. 5, 1999) (citing Evans v. Hudson Coal Co., 165 F.2d 970, 972 (3d Cir. 1948)). Such motions come in two varieties:

factual attacks and facial attacks. A factual attack challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990). Courts have deemed a motion seeking to compel arbitration as a factual attack as it asserts that a provision of an extrinsic document, an arbitration clause contained within the body of a contract, deprives the court of its power to adjudicate the plaintiff's claims. See e.g., Reineke v. Circuit City Stores, Inc., 2004 WL 442639, at *1 (N.D. Ill. Mar. 8, 2004) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). No "presumptive truthfulness" attaches to the plaintiff's allegations in the context of a factual challenge, Lawrence, 919 F.2d at 1529, "and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Id.

## II. FACTUAL BACKGROUND

Nelson, an African-American male, was employed as a Wastewater Collection Operator II "with the [City] for approximately 19.5 years[,] and with OMI jointly with the [City] since July, 2005." (Am. Compl. 3). Nelson "was a member of the International Brotherhood of Electrical Workers Union Local 1205 [("Union")] . . . , which entered into a [CBA] with OMI that governed the terms and conditions of [Nelson's] employment." (Doc. 9 at 2). Article 13 of the CBA, titled "Grievance and Arbitration Procedure," provides the steps necessary to resolve an employee's grievance. (Doc. 9-2). Specifically, it states that "[f]ailure of the parties to effect an amicable settlement or adjustment of a grievance shall constitute a basis for submittal to an impartial arbitrator." (Id. at 22). The CBA further provides in Article 18,

2

titled "Non-Discrimination," that

> Both the Company and the Union agree that the provisions of this Agreement shall be applied to all employees without regard to any individual's race, color, religion, gender, age, national origin, disability or status as a disabled or Vietnam Era veteran, or any other status protected by applicable federal, state or local laws. The Parties to this Agreement hereby acknowledge and agree that *the grievance and arbitration provisions of this Agreement shall be the sole and exclusive remedy for any employee who believes that he or she had been subjected to illegal discrimination in violation of applicable law and/or this Agreement.*

(Id. at 26) (emphasis added).

On November 17, 2009, OMI terminated Nelson's employment (Am. Compl. at 2) "after Nelson failed to report a sewage spill to management, a major violation of OMI's regulations."[1] (Doc. 9 at 2). On November 20, 2009, the Union filed a written grievance on Nelson's behalf, stating, "Nathaniel Nelson feels he was wrongfully and unjustly fired with OMI." (Doc. 9-3 at 2). The Union and OMI were unable to resolve the matter, and in accordance with Article 13 of the CBA, the issue was brought before an arbitrator. (Id.). The arbitrator was to decide "[w]hether or not [Nelson] was terminated for just cause." (Id. at 4). The arbitrator found that there was just cause and stated that Nelson's termination "was primarily based on [Nelson's] infraction of an indisputably important [OMI] policy, namely, the reporting of spills to supervision." (Id. at 15). The arbitrator also stated that he had "no

---

[1] The actual text of the termination notice is as follows: "Effective November 17, 2009 your employment with CH2M HILL OMI is terminated because: this issue of not reporting the spill that occurred on Saturday, November 14, 2009 properly to your supervisor and recent past performance issues. You did not report the spill to your supervisor even during the call to him when you were leaving the site on Saturday or during the morning briefing held Monday morning. The overflow event as you know from multiple Compliance Training sessions is very important to the continued success of CH2M HILL OMI. (Joint-3)." (Doc. 9-3 at 2).

reason to disbelieve the supervisor's testimony [and that] [n]o bias nor discrimination toward [Nelson] was evident." (Id.).

Nelson then filed a complaint for racial discrimination against City and OMI under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") and the Florida Civil Rights Act, Chapter 760 of the Florida Statutes. Nelson alleges that "there is a pattern and practice by [City and OMI] of racial discrimination in job duties, promotions, pay scale, evaluations[,] and termination of employment in favor of non African[-]Americans." (Am. Comp. at 2). Nelson also alleges that he "was terminated on contrived allegations under circumstances in which white employees were retained." (Id. at 3).

## III. DISCUSSION

OMI argues that "[Nelson's] claims have already been litigated and are barred by the doctrine of res judicata," (Doc. 9 at 5) and even if "[Nelson's] claims were not addressed in the previous arbitration, they are still barred under the doctrine of res judicata." (Id. at 7). OMI also argues, in the alternative, that this "[C]ourt should stay the proceedings pending arbitration because [Nelson's] claims are subject to mandatory arbitration pursuant to the enforceable provision of the CBA." (Id. at 8). Nelson, however, argues that "[r]es judicata is not appropriate," (Doc. 10 at 1) and that "Nelson's claims need not be referred to arbitration." (Id. at 7). The Court will first determine the arbitrability of Nelson's Title VII claim and then address the issue of res judicata.

### A. **Arbitrability of Title VII Claim**

Nelson argues that compulsory arbitration of his discrimination claims under the CBA would violate his Title VII statutory right to file suit in federal court. (Doc. 10 at 5). However,

4

the Supreme Court has held that "a [CBA] that clearly and unmistakably requires union members to arbitrate [federal statutory] claims is enforceable as a matter of federal law." 14 Penn Plaza LLC et al. v. Pyett, 129 S.Ct. 1456, 1474 (2009). The Court stated that "[t]he decision to resolve [federal statutory] claims by way of arbitration instead of litigation does not waive the statutory right to be free from workplace . . . discrimination; it waives only the right to seek relief from a court in the first instance." Id. at 1469; see Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991) (" '[B]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.' " (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985)).

Nelson also argues that "[w]hile the CBA allowed the arbitrator to resolve statutory disputes if alleged, Nelson did not individually agree to the arbitration clause in the CBA." (Doc. 10 at 5). However, the Supreme Court has stated that "[n]othing in the law suggests a distinction between the status of arbitration agreements signed by an individual employee and those agreed to by a union representative." Pyett, 129 S.Ct. at 1465. The Supreme Court has only required "that an agreement to arbitrate statutory anti[-]discrimination claims be 'explicitly stated' in the [CBA]." Id. In this case, Article 18 of the CBA provides that "the provisions of this [CBA] shall be applied to all employees without regard to any . . . *status protected by applicable federal, state or local laws.*" (Doc. 9-2 at 26) (emphasis added). The CBA explicitly states that the "grievance and arbitration provisions of this [CBA] shall be the *sole and exclusive remedy for any employee who believes that he or she had been subjected to illegal discrimination in violation of applicable law* and/or this [CBA]." (Id.)

(emphasis added). Therefore, the CBA explicitly states that statutory anti-discrimination claims are subject to arbitration.

Nelson finally argues that the "cost-sharing requirement in the CBA defeats the remedial purpose of Title VII and is thus unenforceable." (Doc. 10 at 8). The CBA provides that "[e]ach [p]arty shall bear the expenses of its representative and witnesses. The fees and expenses of the arbitrator and the costs of hearing facilities shall be borne equally by the [p]arties. (Doc. 9-2 at 22). However, "the Supreme Court, in reviewing a case from [the Eleventh Circuit] . . . , "rejected [the Eleventh Circuit's] conclusion that an arbitration agreement that is silent as to fees and costs is unenforceable because the plaintiff '*might* be required to bear substantial costs of the arbitration.' " Musnick v. King Motor Co. of Fort Lauderdale, 325 F.3d 1255, 1258 (11th Cir. 2003) (internal citation omitted) (emphasis in original). The Supreme Court concluded that "an arbitration agreement's silence with respect to such matters does not render the agreement unenforceable." Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 82 (2000).

The Eleventh Circuit has recognized that, "under Green Tree, a Title VII plaintiff seeking to avoid his agreement to arbitrate his discrimination claim by arguing that prohibitive arbitration costs would undermine his statutory remedy has to *demonstrate* that he is *likely* to bear such costs." Musnick, 325 F.3d at 1258 (emphasis in original) (citing Bess v. Check Express, 294 F.3d 1298, 1303 (11th Cir. 2002)). Absent such a showing, "an agreement to arbitrate must be enforced." Id. In addition, "[a]fter Green Tree, an arbitration agreement is not unenforceable merely because it may involve some 'fee-shifting.' " Id. at 1259. "The party seeking to avoid arbitration . . . has the burden of establishing that

6

enforcement of the agreement would 'preclude' him from 'effectively vindicating [his] federal statutory right in the arbitral forum.' " Id.

Therefore, the question is whether, under Green Tree and Bess, Nelson has "demonstrate[d] that he faces such 'high costs' if compelled to arbitrate his claim against [OMI] that he is effectively precluded from vindicating his Title VII rights in the arbitral forum." Id. at 1260. Nelson, however, does not make clear whether he is in fact required to pay for half the costs of arbitration. In addressing the cost-sharing requirements, Nelson first states that "the CBA requires *the Union* to bear half the fees and expenses of the arbitrator," (Doc. 10 at 6) (emphasis added), but then later states that "*Nelson* must bear half the fees and expenses for the arbitrator." (Id. at 8) (emphasis added). The CBA, however, is between OMI and the Union, not OMI and Nelson.

In addition, "the mere existence of a fee-splitting provision in an agreement [does not] satisfy the claimant's burden to prove the likelihood of incurring prohibitive costs." Blair v. Scott Specialty Gases, 283 F.3d 595, 610 (3d Cir. 2002). Moreover, Nelson has neither "offer[ed] evidence of the amount of fees he is likely to incur, [nor evidence of] . . . his inability to pay those fees." Musnick, 325 F.3d at 1260. Since the "mere existence of a fee-splitting provision" Blair, 283 F.3d at 610, does not render an arbitration agreement unenforceable, and since the CBA explicitly states that statutory discrimination claims are subject to arbitration, Nelson's discrimination claims against OMI are therefore subject to arbitration. Having determined Nelson's claims are subject to arbitration, the Court will now address the res judicata issue.

### B. **Applicability of Res Judicata**[2]

Absent an arbitration agreement to the contrary, the Supreme Court in Howsam "laid out the respective responsibilities of courts and arbitrators." Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1107 (11th Cir. 2004); see Howsam v. Dean Witter Reynolds, 537 U.S. 79, 83-86 (2002). "Adopting the approach embodied in the Revised Uniform Arbitration Act of 2000, the [Supreme] Court held . . . [that] issues of substantive arbitrability . . . are for a court to decide and issues of procedural arbitrability . . . are for the arbitrators to decide." Klay, 376 F.3d at 1107. In addition, there is a presumption that an "arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability." Id.

Res judicata is a "procedural arbitrability issue," id. at 1108; "res judicata [is] for the arbitrator to decide in the first instance." Id. at 1109; Triangle Constr. & Maint. Corp. v. Our Virgin Islands Labor Union, 425 F.3d 938, 947 (11th Cir. 2005) ("Although Triangle does not use the term collateral estoppel or res judicata, to the extent Triangle is arguing such estoppel, the argument is foreclosed by Klay, 376 F.3d at 1109, which held that 'res judicata was for the arbitrator to decide in the first instance.' "). Whether res judicata applies to bar Nelson from adjudicating his discrimination claims through arbitration is not for this Court to decide. Instead, an arbitrator must determine whether Nelson's claims are barred by res judicata.

---

[2] "Under Eleventh Circuit precedent, a claim will be barred by [res judicata] if all four of the following elements are present: (1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." Ragsdale v. Rubbermaid, 193 F.3d 1235, 1238 (11th Cir. 1999).

Accordingly, for the reasons stated, it is hereby

**ORDERED**:

1. Defendant Operations Management International, Inc.'s Motion to Dismiss or Compel Arbitration (Doc. 9) is **GRANTED** to the extent that the Court will compel arbitration of plaintiff's claims.[3]

2. The parties shall submit to arbitration as set forth in Article 13 of the Collective Bargaining Agreement.

3. This case is **STAYED** pending the outcome of arbitration. The Clerk shall administratively close the file, which may be reopened upon motion by any party.

**DONE AND ORDERED** at Jacksonville, Florida this 20th day of October, 2011.

TIMOTHY J. CORRIGAN
United States District Judge

a.
Copies:
counsel of record

---

[3] The City did not formally join OMI's motion to dismiss or compel arbitration and in fact, it filed an answer to Nelson's amended complaint. However, it averred as an affirmative defense that it is not Nelson's employer. See Doc. 7 at 3 (Third Affirmative Defense). Indeed, although the agreement between OMI and the City (which might have explained the relationship between those two entities and the effect on City employees) is not in the record, the CBA demonstrates that Nelson's earlier service with the City, like that of all "transitioning employees," was to be construed as service with OMI. See Doc. 9, Ex. 1-A (CBA) at Appendix A. Moreover, in the parties' case management report, they agreed to delay some of their discovery pending resolution of OMI's motion, suggesting that no party anticipated the case going forward against the City in the event Nelson's claims against OMI were arbitrated. In any event, in the unlikely circumstance that Nelson has raised claims against the City that are independent of those to be arbitrated against OMI, the Court will stay those claims pending the result of the arbitration proceedings. At that time, Nelson may return to Court to explain why any such claims should then be pursued.